UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE (PORTLAND)

```
L.L. BEAN, INC.,                                 :
    Plaintiff/Defendant-in-counterclaim,         :
                                                 :    CIVIL ACTION
             v.                                  :     08-177-PH
                                                 :
BANK OF AMERICA CORPORATION and                  :
FIA CARD SERVICES, N.A.,                         :
    Defendants/Plaintiffs-in-counterclaim.       :


FIA CARD SERVICES, N.A.,                         :
    Plaintiff-in-counterclaim,                   :
                                                 :
             v.                                  :
                                                 :
L.L. BEAN, INC.,                                 :
    Defendant-in-counterclaim.                   :
```

**REDACTED[1]**
**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

　　Before the Court is L.L. Bean, Inc.'s Motion for Preliminary Injunction to Prevent Continued Infringement of Its Trademarks, with Incorporated Memorandum of Law (Doc. #68) ("Motion for Preliminary Injunction" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was conducted on April 14, 2009. For the reasons stated herein, I

---

[1] Because of the presence in footnote 5 of information subject to a confidentiality order and which could be misused (or otherwise cause harm) if made public, this Report and Recommendation is being issued in both a redacted and unredacted form. The redacted version does not include the information in footnote 5.

recommend that the Motion be denied.

## Overview

This case arises out of a co-branded credit card agreement (the "Agreement") between L.L. Bean, Inc. ("Bean"), and FIA Card Services, N.A. ("FIA").[2] Under the Agreement, FIA issued credit cards bearing Bean's name, trademarks, and a statement describing Bean-specific benefits that would be earned in consumer transactions. Although the parties disagree whether the Agreement expired (Bean's position) or was terminated as a result of a breach (FIA's position), there is no dispute that the Agreement ended on or before June 30, 2008.

By the Motion, Bean seeks to require FIA and Bank of America Corporation ("BAC")[3] (collectively "Defendants") to deactivate the credit cards issued by FIA prior to July 1, 2008, (the "Old Bean Cards") and to cease honoring transactions made with these cards. See Motion at 5; L.L. Bean, Inc.'s Reply Memorandum in

---

[2] FIA was formerly MBNA America Bank, N.A., a subsidiary of MBNA Corporation ("MBNA"). In 2006, MBNA was acquired by Bank of America Corporation ("BAC"). At that time, MBNA America Bank, N.A., changed its name to FIA. FIA does business under the name Bank of America Card Services. See Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. #84) ("Opposition") at 1 n.1.

[3] In addition to their other arguments against the Motion, Defendants maintain that there is no basis for injunctive relief against BAC. See id. at 1 n.2. They point out that BAC was not a signatory to the Agreement. They also cite Bean's statement that BAC is "a separate and independent bank holding company [of FIA, with] no role in the credit card operations of FIA." Id. (quoting Bean's Opposition to Defendants' Motion to Designate Case for Complex Track (Doc. #58) at 8).

2

Support of Its Motion for Preliminary Injunction to Prevent Continued Infringement of Its Trademarks (Doc. #93) ("Bean Reply") at 4-5, 10, 12.  Bean contends that the continued use of the Old Bean Cards constitutes unauthorized use of its trademarks by Defendants.  See id. at 1.  Defendants dispute that they have used Bean's trademarks after June 30, 2008, and maintain that the Agreement does not require that they deactivate the Old Bean Cards and/or cease honoring transactions conducted with such cards.  Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Doc. #84) ("Opposition") at 2.  Defendants state that FIA has issued new replacement credit cards which do not bear Bean's name or logo and that this is all the Agreement requires.  See id.

**Applicable Legal Standard**

In determining whether a preliminary injunction should be granted a court must consider: 1) the likelihood of the movant's success on the merits; (2) the anticipated incidence of irreparable harm if the injunction is denied; (3) the balance of relevant equities (i.e., the hardship that will befall the nonmovant if the injunction issues contrasted with the hardship that will befall the movant if the injunction does not issue); and (4) the impact, if any, of the court's action on the public interest.  Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006); see also Esso Standard Oil Corp.

(Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); Animal Welfare Inst. v. Martin, 588 F.Supp.2d 110, 113 (D. Me. 2008); Baldwin v. Bader, No. 07-46-P-H, 2008 WL 564642, at *1 (D. Me. Feb. 28, 2008).  The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor.  Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d at 18; Baldwin v. Bader, 2008 WL 564642, at *1.  "This burden is a heavy one: 'Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal.'"  Friends of Magurrewock, Inc. v. U.S. Army Corps of Engineers, 498 F.Supp.2d 365, 369 (D. Me. 2007)(quoting Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)); see also Baldwin v. Bader, 2008 WL 564642, at *1 ("The court must 'bear constantly in mind that an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.'")(quoting Saco Def. Sys. Div. Maremont Corp. v. Weinberger, 606 F.Supp. 446, 450 (D. Me. 1985))(alteration in original).

 The sine qua non of the four part test is likelihood of success on the merits: if the moving party cannot demonstrate that it is likely to succeed in its quest, the remaining factors become matters of idle curiosity.  Esso Standard Oil Corp. (Puerto Rico) v. Monroig-Zayas, 445 F.3d at 18 (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.

4

2002)); see also McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001)(stating that movant must show "a substantial likelihood of success on the merits").  The importance of that inquiry is magnified in trademark cases because resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing trademark infringement. Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d at 115; see also id. (noting that irreparable harm can be assumed if a trademark holder demonstrates that it is likely to succeed in establishing infringement).  "This emphasis on likelihood of success is fully consistent with the tenet that, as a matter of public policy, trademarks should be protected against infringing uses."  Id.

**Discussion**

The Court is unpersuaded that Bean has met its burden with respect to the Motion.  In particular, the Court is unconvinced that Bean has made a substantial showing that it is likely to succeed on the merits with respect to the relief requested in the instant Motion.[4]  As Defendants accurately point out, the Agreement does not require FIA to deactivate the Old Bean Cards and/or dishonor transactions made with such cards.  All that the Agreement requires is that within ninety days of its expiration

---

[4] It bears noting that the "Motion deals with only a narrow facet of Bean's overall case against the Defendants."  Motion at 1.

5

or termination FIA issue new credit cards not bearing the Bean name or logo.  FIA has done this.  See Affidavit of Louis Ziccarelli (Doc. #85) ("Ziccarelli Aff.") ¶ 33.  FIA has additionally advised holders to destroy their Old Bean Cards and to activate their new credit cards.[5]  Id. ¶¶ 9, 29-30, 36.  The Agreement does not provide that the Old Bean Cards expire upon termination of the Agreement, nor does it provide that the holders of those cards lose their right to use the cards if FIA and Bean end their relationship.

Although Bean argues that FIA's obligation under the Agreement to "replace the credit card plastic ...," Agreement ¶ 27(g)(ii), requires that FIA not only issue new cards but also deactivate the Old Bean Cards or refuse to honor any transaction made with the old card, the Agreement lacks such requirements.  If Bean wanted such provisions, it could have negotiated for them when the Agreement was drafted.[6]  Their absence weighs against

---

[5] REDACTED.

[6] FIA states that, as a matter of routine practice, it does not enter into agreements requiring the issuance of new account numbers or deactivation of old credit cards because it is too costly, too time consuming, and too disruptive to the consumer.  Ziccarelli Aff. ¶ 53; see also id. ¶ 52 ("In 2008 alone, FIA had over 198 such arrangements terminate, expire, or otherwise end.  In no case did FIA issue new account numbers for the entire portfolio when it replaced the card plastic (other than in the context of an upgrade to Signature status, where Visa rules required a change.").  While Bean contends that Defendants only need to set their card authorization system to decline the Old Bean Cards and that "there is nothing costly, laborious or lengthy about the process," L.L. Bean, Inc.'s Reply Memorandum in Support of Its Motion for Preliminary Injunction to Prevent Continued Infringement of Its Trademarks (Doc. #93) ("Bean Reply") at 2

6

granting the Motion.[7]  Cf. Midas Int'l Corp. v. T & M Unlimited, Inc., No. 00-CV-0899E(F), 2000 WL 1737946, at *4 (W.D.N.Y. Nov. 17, 2000)(granting preliminary injunction where the agreement between plaintiff and defendant was "clear" and injunction did not require defendant "to do anything that it did not specifically agree to do in the event its franchise was terminated pursuant to its agreements with [plaintiff]").

The Court is also unconvinced that Bean has shown that FIA is using Bean's trademarks.  The only "use" of the trademarks occurred while FIA had a license to do so.  Distilled to its essence, Bean's complaint is that FIA has allowed cardholders who

---

(internal quotation marks omitted), the Court is persuaded by the Ziccarelli affidavits that the relief Bean seeks in the instant Motion would impose a substantial burden on FIA, see Ziccarelli Aff. ¶¶ 51-58; see also Supp. Ziccarelli Aff. ¶¶ 3-15.  It would also impose a substantial hardship on the hundreds of thousands of cardholders whose accounts would have to be deactivated in order to provide the relief Bean seeks.  See Ziccarelli Aff. ¶¶ 54-55; Supp. Ziccarelli Aff. ¶¶ 11, 15.  For the sake of absolute clarity, however, the finding that the relief which Bean seeks would impose a substantial burden on FIA is not based in any way on FIA's claim that granting the Motion would require that FIA "run a new credit check on each customer ...," Ziccarelli Aff. ¶ 54.  FIA could dispense with such credit check if it chose to do so.  Thus, this aspect of the burden would be purely self-imposed.

[7] A post-hearing submission by Bean, see Order Allowing Plaintiff to File Document (Doc. #121), does not alter the Court's conclusion that the Motion for Preliminary Injunction should be denied.  Bean is referenced only on the first page of the document (FIA-E-00196065), while the remaining pages are generic in nature.  Even assuming that the document is evidence that BOA gave consideration in September of 2007 to a plan of conversion which involved the deactivation of the Old Bean Cards, the fact remains that the Agreement (the most recent version of which was executed five years earlier between Bean and MBNA America Bank, N.A.) does not require the deactivation of the Old Bean Cards.

were issued valid credit cards, which Bean authorized, to continue using their unexpired cards.  While Bean appears to contend that this use by the cardholders constitutes unlawful use by FIA of its trademarks because FIA could legally terminate the accounts of these cardholders, see Affidavit of Bryce Johnston (Doc. #71) ("Johnston Aff."), Ex. 1 (Credit Card Agreement) at 25, the Court finds this contention unpersuasive.  The holders of the Old Bean Cards are able to make purchases over the telephone and on the Internet without physically presenting or displaying their cards to anyone.  Indeed, a cardholder could destroy his/her Old Bean Card but continue to make telephone and Internet purchases simply by providing the card number and security code which s/he had copied from the card.  Under Bean's view, such purchases would presumably still constitute unlawful use of its trademarks by FIA.  The Court rejects such contention.  As Defendants suggest, Bean appears to conflate the physical credit card plastic with the underlying credit card account.  See Opposition at 1.

Even if the Court were to consider only situations where a cardholder physically presents his or her Old Bean Card to a merchant, the Court is still unconvinced that this constitutes unlawful use of Bean's trademark by FIA.  Bean authorized FIA to use Bean's trademarks on the Old Bean Cards and to issue those cards to cardholders with expiration dates extending beyond the

term of the Agreement.  The Court sees no basis under trademark law for Bean to control the cardholders' continued use of the Old Bean Card plastic.  In short, Bean's argument that FIA is "using" its trademarks is a stretch.  Preliminary injunctions should be issued only where it is clear that the movant is entitled to relief.  See Q Div. Records, LLC v. Q Records and QVC, Inc., No. Civ.A. 99-10828-GAO, 2000 WL 294875, at *2 (D. Mass. Feb. 11, 2000)("A preliminary injunction, though often sought in trademark cases, is still extraordinary relief.  It constitutes the exercise of a far-reaching power which ought not be indulged in lightly.").  That is not the case here.  Cf. id.

Moreover, this "Court should only sparingly exercise its authority to issue an interlocutory injunction which requires a defendant to take affirmative action."  Stanton v. Brunswick Sch. Dep't, 577 F.Supp. 1560, 1567 (D. Me. 1984); see also Roda Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009) ("Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts should be especially cautious when granting an injunction that requires the non-moving party to take affirmative action—a mandatory preliminary injunction—before a trial on the merits occurs."); NBA Props, Inc. v. Gold, 895 F.2d 30, 33 (1st Cir. 1990)(noting that "courts may be more reluctant to grant mandatory injunctions than prohibitory ones"); Citizens Concerned for Separation of Church &

State v. City & County of Denver, 628 F.2d 1289, 1299 (10th Cir. 1980)("It is fundamental that mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts."); Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976)("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."). Here Bean is seeking to have the Court impose mandatory, affirmative obligations on FIA-–deactivation and dishonoring of the Old Bean Cards. Motion at 5, 18; Bean Reply at 4-5, 10, 12. Thus, Bean's request warrants extra scrutiny. See Schrier v. Univ. of Colorado, 427 F.3d 1253, 1261 (10th Cir. 2005)(noting that a request for preliminary injunction which seeks mandatory relief "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course")(italics omitted); Graham v. Med. Mut. of Ohio, 130 F.3d 293, 295 (7th Cir. 1997)("[M]andatory preliminary writs are ordinarily cautiously viewed and sparingly issued."); Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993)("[M]andatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and the law clearly favor the moving party.") (internal quotation marks omitted). Applying that extra scrutiny

to the facts and the law in the instant matter, it is even clearer that Bean has not met its burden with respect to the mandatory injunctive relief which it seeks.[8]

Given Bean's inability to make the necessary showing with respect to the first factor, it is not mandatory for the Court to discuss the remaining three factors. See Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d at 18 ("[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."). Nevertheless, in the interest of completeness, the Court will briefly state its findings with respect to the remaining three factors.

With respect to the anticipated incidence of irreparable harm, even accepting Bean's claim that it is being harmed whenever one of the Old Bean Cards is used to make a purchase, it is reasonable to conclude that the number of such cards still being used is relatively small in comparison to the total number of Old Bean Cards issued. The Court bases this conclusion on the following facts. FIA has issued new cards to all cardholders and instructed them to destroy their old cards. Bean has advised

---

[8] Defendants also make a substantial argument with respect to the first factor that Bean's request for a preliminary injunction should be denied because it is not tethered to any allegations in Bean's Second Amended Complaint. See Opposition at 1-2. While this Magistrate Judge finds it unnecessary to discuss this additional argument, its existence is noted as a matter for the District Judge's information.

11

cardholders that the Old Bean Cards no longer provide "Bean benefits."  Ziccarelli Aff. ¶ 23 (quoting Ex. 7 at 2).  Given the volume of communications which both Defendants and Bean have directed towards holders of the Old Bean Card, the Court cannot believe that more than a relatively small percentage of holders of the Old Bean Card are continuing to use the card even though it no longer provides Bean benefits.  Moreover, this small percentage is declining with each passing month as the Old Bean Cards expire of their own accord.[9]  Thus, even assuming Bean is suffering irreparable harm, the number of incidents of such harm is relatively small and is continuously declining.

As for the balance of the relevant equities, the Court finds that they weigh in favor of FIA and against Bean.  The Court is persuaded by the Ziccarelli affidavits that the only practical way for Defendants to deactivate the Old Bean Card "accounts is to cancel each customer's account ..., open a new account number, and print new card plastic with the new account number."  Ziccarelli Aff. ¶ 54.  Thus, the relief requested by Bean would require FIA to change the account numbers of 1½ million customers.  See id.  This would be a huge undertaking and impose a substantial hardship on FIA.  See id.  In contrast, the hardship on Bean if the injunction does not issue is much less.

---

[9] The Court confirmed with counsel at the April 14, 2009, hearing that the Old Bean Cards have an expiration date of three years from the date of issuance.

12

The hardship stems from a far smaller number of card holders who, despite the issuance of replacement cards and repeated notices and advisories regarding the end of the relationship between FIA and Bean, continue to use their Old Bean Cards. As already noted, the number of these card holders diminishes each month as the Old Bean Cards expire.

The final factor is the impact of the Court's action on the public interest. If the Court grants the Motion, FIA will be forced to change the account numbers of 1½ millions credit card holders. Such action will doubtless cause inconvenience and possibly severe hardship to many of these individuals. On the other hand, if the Motion is denied, Bean will continue to have holders of the Old Bean Card annoyed and possibly angered by Bean's refusal (or inability) to provide the Bean benefits which they were promised under the program which no longer exists. Again, however, the incidents of such annoyed or angered customers must necessarily be declining with each passing month as the Old Bean Cards expire. Thus, the public interest weighs against Bean and in favor of FIA.

**Summary**

Bean has not shown a likelihood of success on the merits because the Agreement does not require that FIA deactivate the Old Bean Cards and/or dishonor transactions made with such cards. Bean also has not shown that FIA is using Bean's trademarks.

Even assuming that Bean is suffering irreparable harm, the incidence of that harm is declining as the Old Bean Cards expire, and it will cease totally when the last of those cards expire in June 2011.  The balance of equities favors FIA and weighs against Bean because granting the Motion would impose a substantial hardship on FIA while denying it will impose a lesser hardship on Bean.  Lastly, the public interest would be more adversely affected by granting the Motion than by denying it.

### Conclusion

Accordingly, for the reasons stated above, I recommend that the Motion be denied.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); D. Me. Local R. 72.1.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
April 28, 2009