UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| L.L. Bean, Inc.,<br><br>　　　　Plaintiff/Defendant-in-counterclaim<br><br>　　v.<br><br>Bank of America Corporation and FIA Card Services, N.A.,<br><br>　　　　Defendants/Plaintiffs-in-counterclaim | CIVIL ACTION<br>NO. 08-177-PH |
| FIA Card Services, N.A.,<br><br>　　　　Plaintiff-in-counterclaim<br><br>　　v.<br><br>L.L. Bean, Inc.,<br><br>　　　　Defendant-in-counterclaim | |

**JOINT MOTION OF L.L. BEAN AND
BRANN & ISAACSON TO QUASH SUBPOENA
AND FOR PROTECTIVE ORDER AND OBJECTION
TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Pursuant to Rules 26 and 45 of the Local Rules and the Federal Rules of Civil Procedure, Brann & Isaacson, and its client, L.L. Bean, Inc. ("Bean") jointly file this Motion to Quash Subpoena and For Protective Order (the "Joint Motion") to (1) quash Defendants' abusive and improper subpoena of Bean's trial counsel, Brann & Isaacson; and (2) seek judicial relief from Defendants' discovery abuses, which include their last-moment Motion for Protective Order which seeks to derail Bean's 30(b)(6) deposition of Defendant FIA Card Services, Inc. ("FIA"). It also

serves as Bean's formal objection to Defendants' Motion for Protective Order. Defendants' diversionary and overreaching discovery tactics have forced Brann & Isaacson to divert its time and resources—which were to be spent preparing for next week's multiple depositions during the final week of discovery—to fighting Defendants' unseemly attempt to disrupt Bean's attorney-client relationship and plunge the litigation into a costly, burdensome, and unnecessary sideshow. Brann & Isaacson and Bean respectfully seek an order from the Court putting on hold *all remaining discovery* while the serious matters raised by the pending motions are carefully considered and resolved by this court. The undersigned certifies that he has satisfied the "meet and confer" obligations as reflected in Exhibit A to the Memorandum filed in support hereof. Defendants' counsel has not responded in any way to Exhibit A.

**MEMORANDUM IN SUPPORT OF JOINT MOTION
AND OBJECTION TO MOTION FOR PROTECTIVE ORDER**

Brann & Isaacson and Bean have been forced to file this Joint Motion for two reasons: **First**, they must *both* fight—to protect and preserve Bean's important privileges and immunities from discovery—a harassing subpoena served upon Brann & Isaacson by the Defendants, seeking testimony and documents[1] on dozens of subjects spanning more than a decade, all of them implicating matters protected by the attorney-client privilege enjoyed by its client, Bean, or information protected by the work product doctrine and other privileges.[2] In regard to none of these subjects have Defendants' counsel made any meaningful effort to obtain information from other, non-lawyer witnesses who are employees or former employees of Bean or from relevant third parties. This kind of conduct is unprecedented in the District of Maine, reflecting a cynical and dramatic departure from the ordinary practice of civility, reasonableness, and respect for the attorney-client relationship that is recognized by attorneys who regularly practice before Maine's federal and state courts. **Second**, Bean must oppose Defendants' abusive discovery tactics, including their disingenuous Motion for Protective Order ("Defendants' Motion") filed late in the day on November 24, 2009 that seeks to stop Bean from taking essential discovery, including a Rule 30(b)(6) deposition of FIA. Defendants' Motion presents, with false piety, the claim that Bean has failed to give reasonable notice to its deponents, *while simultaneously concealing from the court that*

---

[1]The subpoena includes a sweeping document request (the "Document Request"), as well as equally broad topics of examination pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure (the "Subjects of Examination"), copies of which are attached hereto as Exhibits B and C, respectively.

[2] It is important to note that non-privileged materials from Brann & Isaacson's files that were responsive to Defendants far-reaching discovery of Bean have already been produced. The subpoena, however, goes beyond what was asked of Bean, seeking privileged communications (and work product) through November 30, 2009, including material specifically covering "[t]his lawsuit, including the decision to file suit or asserted damages," [Document Request at 8, ¶ 3(t)], and "[t]he actual or proposed litigation between Bean and Defendants," [Document Request at 9, ¶ 4(f)].

*Defendants have given Bean and Brann & Isaacson less notice on far more intrusive and burdensome discovery.*[3]

### I.     DISCUSSION

**A.     The Subpoena of Brann & Isaacson Should Be Quashed**

Defendants have served opposing counsel—Bean's outside law firm, Brann & Isaacson—with a breathtakingly broad Rule 30(b)(6) subpoena that is nothing less than a full frontal assault on the attorney-client privilege, the "common interest" privilege, and the work product doctrine.

The subpoena is outlandish and undisciplined in its scope, flying directly in the face of the clear requirement of Rule 45 that lawyers carefully circumscribe discovery to minimize cost and disruption to third parties.  "While … some degree of fishing is anticipated by the Federal discovery rules, those rules do not sanction a party to employ essentially a purse seine that indiscriminately sweeps in not only relevant catch, but hosts of irrelevant and protected species of information." *Jicarilla Apache Nation v. United States*, 88 Fed. Cl. 1, 20 (2009)(citing *Vons Cos v. United States*, 51 Fed. Cl. 1, 24-25 (2001)).   The Defendants' subpoena unabashedly seeks disclosure of client briefings by trial counsel—oral and written—concerning "[t]his lawsuit, including the decision to file suit or asserted damages." [Document Request at 8, Request 3(t)].   It demands that L.L. Bean's lawyers answer questions under oath—and provide every scrap of paper, including their handwritten notes—concerning legal advice provided at confidential meetings between client and counsel from 1996 to the present.  [*See* Document Request at 6 – 11, Requests 1, 3, 5, 7; Subjects of Examination at 5, Deposition Topic No. 2].  The Defendants have made no effort whatsoever to restrict their areas

---

[3]For example, Defendants noticed the Brann & Isaacson deposition after business hours on November 19, 2009, demanding the production of vast categories of inescapably privileged documents on November 30, 2009—the Monday after the Thanksgiving holiday—and testimony on a broad swath of topics on December 3, 2009.  Yet, their attempt to stop the deposition of FIA involves a subpoena served at the same time (6:00 a.m. on November 20), not calling for the production of any new documents, and covering a less intrusive list of subjects.  Additionally, Defendants' had long known of Bean's plans to conduct a 30(b)(6) deposition of FIA.

of inquiry to non-privileged communications in which transactional attorneys at Brann & Isaacson may have been involved.

In sum, the extraordinary scope and indiscriminate targeting of all aspects of the attorney-client relationship strongly suggests Defendants' intent to harass a litigation opponent and its counsel, as well as to interfere with their ability to complete discovery and prepare for trial. Defendants' large and experienced law firms should have known better. Defendants' lawyers understood well the disruptive consequences of their "going nuclear" discovery salvo. As the Eighth Circuit explained in its seminal case of *Shelton v. American Motors Corp.*:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation. It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony. Finally, the practice of deposing opposing counsel detracts from the quality of client representation. Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent. Moreover, the 'chilling effect' that such practice will have on truthful communications from the client to the attorney is obvious.

805 F.2d 1323, 1327 (8th Cir. 1996).

### 1. <u>Defendants Cannot Meet the Heavy Burden Required to Depose Bean's Attorneys</u>

The federal courts have confronted head on the growing phenomenon of parties seeking to obtain the testimony of opposing counsel. The First Circuit, in particular, has imposed strict limits on the use of such tactics—concluding that the procurement of such testimony "is generally disfavored." *E.g., Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003) (upholding a motion to quash a subpoena seeking the trial testimony of opposing counsel).[4]

---

[4] The federal trial courts are accorded broad powers to "temper the liberal scope of discovery" by quashing subpoenas and entering protective orders to prevent the harassment, oppression, and other abuses of the discovery process. *See* 6 Moore's Federal Practice § 26.101 at 26-240. Indeed, district courts "*must* quash or modify" subpoenas

*Bogosian* relied upon a line of precedent originating in the seminal decision of *Shelton v. American Motors Corp.*, where the Eighth Circuit described the "increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed o*nly in limited circumstances*." 805 F.2d at 1327 (emphasis added).

Courts have long used their inherent power to prohibit the depositions of opposing counsel[5] absent exigent circumstances that warrant such an intrusion into the attorney-client relationship. The *Shelton* case established a three-part test requiring a showing that (1) "no other means exist to obtain the information"; (2) the information sought is "relevant and non-privileged"; and (3) the information is "crucial to the preparation of the case." *Id.* at 1327; *accord Bogosian,* 323 F.3d at 66. The burden is on the party seeking to take the deposition to meet each of these requirements. *See, e.g., Boughton v. Cotter Corp.*, 65 F.3d 823, 831 n.10 (10th Cir. 1995).

Here, Defendants cannot make it past the first prong of the test. Any conceivably non-privileged information (and non-work product) called for by the subpoena is available from other witnesses and sources—including Bean. Bean has identified, both in written discovery and during depositions, the identity of multiple employees of Bean who have knowledge of such matters.[6] Yet, in multiple depositions of Bean—including its Rule 30(b)(6) deposition—Defendants' counsel failed to inquire about these subjects and other matters for which testimony has been demanded from Brann & Isaacson, including specifically "steering group" and "audit committee" meetings, that lie

---

to third parties that fail to allow a reasonable time to comply or subject a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(i) & (iv)(emphasis added).

[5]The subpoena is so broad, that it reaches client meetings and communications attended by numerous Brann & Isaacson attorneys, including Bean's lead trial attorney, George S. Isaacson. This is not a narrowly targeted subpoena designed to elicit factual testimony from a lawyer who, for example, was present at non-privileged meetings with third parties and is sought to be questioned on such limited matters, but an attempt to seek testimony and information from every attorney who has provided legal advice to Bean on its credit card program from inception (in 1995) to the present.

[6] For example, in regard to the negotiation of the Agreement between L.L. Bean and FIA's predecessor, MBNA, Bean has identified Brad Kaufman, Greg Sweeney, Steve Fuller, Chris McCormick, and others as Bean employees and former employees principally involved in the negotiation process. None of their depositions have been noticed or taken.

at the heart of the subpoena and Defendants' attempt to force the disgorgement of privileged information and work product. *See Id.* at 830 (upholding motion to quash because plaintiffs did not "fully explore those matters upon which they wished to inquire of defendant's counsel with the witnesses they did depose"). In *Boughton*, a motion to quash the deposition of the defendant's attorney was granted where plaintiffs had "failed to make a substantial effort to establish as many elements of the alleged wrongs as was possible through alternative" means of discovery before seeking the lawyer's testimony. *Id.* at 831.[7]

In short, Defendants cannot demonstrate that "no other means exist to obtain the information" unless their real intention is to obtain information (and documentation) protected by privilege or work product immunity. Such an intention, however, would fall afoul of the second prong of the *Shelton* test: namely, that the information is "relevant *and non-privileged*." *Shelton*, 805 F.2d at 1327 (emphasis added). Indeed, Brann & Isaacson has already produced from its own files—and in response to discovery propounded to its client, L. L. Bean—relevant materials that are not protected by any privilege or the work product doctrine. Defendants have been at liberty to examine knowledgeable witnesses from Bean. Moreover, given that the Defendants have made no effort to obtain the information from non-attorney witnesses, they also cannot meet the burden of demonstrating that the information and documents sought from Brann & Isaacson are "crucial" to their case. Indeed, Brann & Isaacson submits that the "fishing expedition" nature of Defendants' subpoena demonstrates that Defendants have no idea what they are *really* after—apart from putting opposing counsel through a tortuous compliance process at the very time counsel is preparing to participate in the final week of discovery.

---

[7]Moreover, with regard to communications with Barclays (with whom Bean has asserted a "common interest" privilege), Defendants seek testimony from Brann & Isaacson before even questioning Barclays on the same subjects.

There can be no dispute that the subpoena demands the production of documents to which Defendants know—or should know—they are not entitled. "[T]he attorney-client privilege applies to all information conveyed by clients to their attorneys for the purpose of drafting documents to be disclosed to third persons and all documents reflecting such information, to the extent that such information is not contained . . . in the document and is not otherwise disclosed to third persons." *Schenet v. Anderson*, 678 F. Supp. 1280, 1283 (E.D. Mich. 1988). This includes drafts of contracts, documents relating to contract language, and documents relating to the assessment of the rights and obligations of parties to an existing contract. *See Muller v. Walt Disney Productions*, 871 F. Supp. 678, 682 (S.D.N.Y. 1994); *In re Mentor Corp. ObTape Transobturator Sling Prods. Liability Litig.*, 632 F. Supp. 2d 1370, 1382 (M.D.Ga. 2009); *Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 260 (E.D.Pa. 2008); *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 302 n.1 (D. Utah 2002). The only conceivable purpose for subpoenaing from Bean's *counsel* all documents "evidencing, constituting, referring to, or commenting on the negotiations and drafting" of any agreement between Bean and MBNA, for example, is to obtain precisely these privileged documents, *i.e.*, communications between Bean and its counsel that have never before been shared with third parties.

Defendants may counter that their sweeping subpoena is not limited to seeking information from Bean's trial attorneys, but also extends to other attorneys at Brann & Isaacson who were involved in providing legal advice in connection with the credit card agreements between Bean and Defendants (and their predecessor, MBNA). Defendants' subpoena does not fall within the narrow circumstances where some courts have been willing to allow limited-scope depositions of non-litigation lawyers if the testimony sought is strictly confined to non-privileged factual information. Much to the contrary, Defendants have opted for a blunderbuss subpoena for testimony and

6

documents, attempting to inveigle multiple members of a law firm in a wide-ranging interrogation over a decade of events both pre-litigation and post-litigation. This approach to discovery reflects no effort to limit interrogation to any person with independent knowledge of specific facts, nor to limit its reach to purely factual matters as opposed to legal advice, including trial preparation and strategy.

In addition, courts have limited such depositions to lawyers who have been assigned "substantial, non-legal, non-litigation responsibilities," so as to limit potential intrusion into privileged communications and knowledge on the part of persons who function mainly as legal counsel. *See United States v. Philip Morris, Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002). Brann & Isaacson is an outside law firm with attorneys who are not employees, officers, or directors of Bean. Brann & Isaacson lawyers regularly provide advice to Bean's officers, Board of Directors and governance committees. Their relationship with L. L. Bean is that of legal counsel. Even where depositions of non-litigation lawyers have been allowed, interrogating counsel have been under strict instruction "not to delve into any matters pertaining to [counsel's] representation of [the party] as a member of its legal team, including his mental impressions or legal conclusions formed in that capacity." *See Boston Edison Co. v. United States*, 75 Fed. Cl. 557, 563 (2007). Excluding such matters would gut Defendants' subpoena given their clear focus on obtaining discovery of purely privileged information and work product from Bean's outside attorneys. *See also Boughton.*, 65 F.3d at 829(applying the protections of *Shelton* to an in-house lawyer who operated "solely as an attorney" and "made no operating decisions").[8]

**B.    The Subpoena Represents Part of A Pattern of Discovery Abuses Designed to Obtain Unfair Litigation and Discovery Advantages.**

---

[8]After being served with a subpoena on its law firm, Bean issued a deposition subpoena to Andrew Civiletti, in-house business counsel for FIA Card Services, solely as a defensive measure in the event that the Court determines that it is "open season" for the deposition of lawyers in this case. Plaintiff does not intend to proceed with Mr. Civiletti's deposition if the Court grants the instant Motion to Quash.

7

Bean respectfully submits that subpoena of its attorneys represents only one part of an overarching litigation strategy designed to obtain an unfair advantage. By driving this litigation into an unwarranted discovery morass, Defendants are preventing Bean's counsel from conducting remaining depositions—and defending depositions noticed by Defendants—free of such extraordinary distractions, burdens, and diversions.

The First Circuit has expressed particular concern about the use of subpoenas directed to a party's attorneys as a vehicle for harassment. *Bogosian,* 323 F.3d at 66 (an appropriate factor to consider on a motion to quash is whether "the subpoena was issued primarily for purposes of harassment"). In *Bogosian*, the Court of Appeals identified a number of factors bearing on the question of harassment. *Id.* at 67. Included among these factors were delay in seeking such testimony until the last moment; the inclusion of oppressive document requests spanning many years; and the availability of the same evidence from other sources. Here, Defendants' intentions to harass Bean (and Brann & Isaacson) are patently clear.

**First**, as noted above, Defendants intentionally waited until the end of discovery to serve the subpoena on Brann & Isaacson. The subpoena represents an effort to distract Bean's trial team at the very moment when final depositions are being taken and defended in the handful of days prior to the December 4, 2009 discovery closure date. No reasonable lawyer could deny the obviously foreseeable consequences resulting from the "disfavored" tactic of deposing opposing counsel. *Id.*.

**Second**, as in the case of *Bogosian*, Defendants' subpoena included indiscriminate document requests spanning over a decade and involving dozens of subparts covering every issue conceivably related to Bean's credit card programs (and related litigation) from the date of inception to the moment of its deposition on December 3, 2009. It is apparent from the face of the notice that Defendants' counsel engaged in no attempt whatsoever to craft its discovery narrowly to (1) avoid

8

intruding on the attorney-client relationship between Bean and its lawyers, and (2) avoid forcing Brann & Isaacson to halt its preparations for participation in scheduled depositions by being diverted to prepare for its own deposition and file the motion and objections necessary to protect its client's important rights and privileges.

**Third**, Defendants have dithered in their discovery from Bean on the very matters that they now propound to Bean's lawyers. Defendants' counsel failed to explore—substantially or otherwise—through witnesses knowledgeable on the very same subjects identified in the Brann & Isaacson subpoena. In short, as in *Bogosian*, Defendants have sought to depose Brann & Isaacson in the first instance on such matters. This is a clear violation of the applicable standards described above.

In sum, Defendants document requests and subjects for examination are focused on making Brann & Isaacson the main witness on a host of matters that would be best addressed—or at least initially addressed—by others. Defendants' subpoenaing of opposing counsel, at the very last moment, with no showing of necessity and without having attempted to obtain information through ordinary discovery channels, reflects precisely the kind of conduct that is careless in the extreme, indifferent to the obligations of the rules governing discovery, burdensome on non-party witnesses, and bears the unmistakable quality of scorched-earth litigation strategy.

Defendants' Motion for Protective Order hides from the Court all of these facts. Defendants' counsel presents their client as an innocent party deprived of reasonable notice when, in truth, they have been coordinating abusive discovery tactics that far exceed all of their complaints about Bean's depositions. A comparison of the Rule 30(b)(6) subpoena on Brann & Isaacson to the Rule 30(b)(6) deposition notice served on FIA demonstrates the duplicity inherent in Defendants' conduct and

motion practice—in that they were simultaneously moving this Court for relief on the basis of "unreasonable" notice, while playing fast and loose with the very same rules:

| Brann & Isaacson Subpoena | FIA Deposition Notice |
|---|---|
| *Served on November 19, 2009 after close of business* | *Served at 6:22 a.m. on November 20, 2009* |
| *Demands production of documents on November 30, 2009 (just 4 business days later—with production on the Monday after Thanksgiving)* | *Contains no document request* |
| *Includes 83 document requests, inclusive of sub-parts* | *Contains no document request* |
| *Seeks a testimonial deposition on December 3, 2009 with four broad subjects, but dozens of subsidiary subjects.* | *Seeks testimony on December 3, 2009 on 18 subjects that are narrowly tailored, including authentication of documents.* |

Moreover, Defendants gave *less* notice for the Rule 30(b)(6) notice of deposition of L.L. Bean—a period of twelve days, in contrast to the thirteen-days notice that Bean gave for the FIA deposition. Just as critically, the notice of deposition of Bean served by FIA included *sixty-one (61) separate subjects for interrogation* in contrast to the narrowly-tailored *eighteen (18) categories* included in Bean's deposition notice to FIA. Brann & Isaacson prepared its client for such deposition and Bean appeared for deposition on November 23, as scheduled, understanding that both parties were aware for a period of months that Rule 30(b)(6) depositions would need to be conducted within the discovery period.

### III. CONCLUSION

For all of the reasons set forth above, Brann & Isaacson and Bean respectfully ask this court to quash the subpoena served on Brann & Isaacson, and to enter an order suspending depositions to provide counsel for Bean with an adequate opportunity to prepare for such depositions and to reschedule them promptly at such time after December 4, 2009 as can be accommodated by counsels' respective schedules.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 25, 2009 | /s/ George S. Isaacson |
|  | George S. Isaacson |
|  | David W. Bertoni |
|  | Matthew P. Schaefer |
|  | BRANN & ISAACSON |
|  | 184 Main Street, P. O. Box 3070 |
|  | Lewiston, ME 04243−3070 |
|  | Tel. (207) 786−3566 |
|  | gisaacson@brannlaw.com |
|  | dbertoni@brannlaw.com |
|  | mschaefer@brannlaw.com |
|  | *Attorneys for L.L. Bean & Brann & Isaacson* |

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2009, I electronically filed the foregoing, L. L. Bean, Inc.'s Motion To Compel using the CM/ECF system, which will send notification of such filing to counsel of record:

S. Elaine McChesney, Esq.
Allyson E. Kurker, Esq.
Bingham McCutchen LLP
One Federal Street
Boston, MA  02110-1726
elaine.mcchesney@bingham.com
allyson.kurker@bingham.com

Corin R. Swift, Esq.
Bingham McCutchen LLP
85 Exchange Street, Suite 300
Portland, ME  04101-5045
corin.swift@bingham.com

Bradley R. Kutrow, Esq.
Grant D. Goldenberg, Esq.
Angela Z. Zimmern, Esq.
McGuireWoods
201 North Tryon Street, Suite 2900
Charlotte, NC  28202-4011
bkutrow@mcguirewoods.com
ggoldenberg@mcguirewoods.com
azimmern@mcguirewoods.com

/s/ George S. Isaacson

11