UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| L.L. Bean, Inc.,<br>Plaintiff/Defendant-in-counterclaim<br><br>v.<br><br>Bank of America Corporation and FIA Card Services, N.A.,<br>Defendants/Plaintiffs-in-counterclaim | CIVIL ACTION NO.<br><br>08-177-PH |
| FIA Card Services, N.A.,<br>Plaintiff-in-counterclaim<br><br>v.<br><br>L.L. Bean, Inc.,<br>Defendant-in-counterclaim | |

## **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

McGuireWoods LLP
Bradley R. Kutrow
Grant D. Goldenberg
Angela H. Zimmern
100 North Tryon St, Suite 2900
Charlotte, NC 28202
(704) 343-2000
bkutrow@mcguirewoods.com
ggoldenberg@mcguirewoods.com
azimmern@mcguirewoods.com

*Attorneys for Bank of America Corp and FIA Card Services, Inc.*

**INTRODUCTION**

Defendants Bank of America Corporation ("BAC") and FIA Card Services, N.A. ("FIA") (together, "Defendants") submit this memorandum in opposition to the Motion to Compel Defendants to Produce Documents Responsive to Bean's Requests and Certain Information Withheld on Grounds of Privilege to Which No Privilege Appears to Apply filed by Plaintiff L.L. Bean, Inc. ("Plaintiff" or "Bean") on November 13, 2009.

Bean's Motion misstates some facts and omits others entirely in its attempt to convince the Court that Defendants have failed to meet their discovery obligations. As will be shown below, however, Defendants have gone to extensive efforts and expense to satisfy Bean's insistence that more documents must exist and must be produced. Defendants have fully complied with the applicable rules and made productions that are more than sufficient and up to date. Further, Defendants have abided by the privilege log agreement reached with Bean at the outset of the case, which Bean now seeks to disavow. Bean's motion should be denied in all respects.

**ARGUMENT**

**A.    The Underlying Discovery Agreements and Communications Between the Parties**

Bean complains about three discrete aspects of FIA's document production. While all of these issues have been addressed by counsel in various telephone and written conference along the way, Bean's motion was filed roughly four hours after it was threatened and before any actual conference among counsel could take place in response to Bean's threat. The short answer is that Defendants have, following reasonable procedures, collected and produced the documents Bean seeks and are abiding by the parties' agreement, reached months ago, regarding post-lawsuit privileged documents.

1

B.   **Bean's Demand for Additional "Program Performance" Documents**

1.   **FIA Has Produced All Post-Termination Financial Performance Documents Concerning the Former Bean Cardholder Group.**

Bean's motion acknowledges that FIA has produced documents regarding the collective performance of the accounts of FIA's WorldPoints cardholders who formerly held the Bean Visa card, including summary financial data through June 30, 2009. Bean insists, however, that Bean is "entitled" to other, additional documents it imagines must have been created. Bean fails to recognize that, after the fall of 2008, there was no business reason for FIA to manage or analyze the former Bean cardholders separately from other "dormant group" WorldPoints cardholders. *See* Declaration of Louis Ziccarelli, December 3, 2009, at ¶¶ 4-5. Accordingly, FIA routinely generated only profit and loss calculations (by month) and attrition reports for the former Bean cardholders. All of those documents have been produced. Ziccarelli Decl. at ¶¶ 5-10. During a "meet and confer" on July 7, 2009, counsel for FIA conveyed this information to Bean's counsel. FIA has repeatedly stated it will produce responsive "program performance" documents to the extent they exist, and has produced those documents in successive productions.[1] Bean has stubbornly insisted that additional documents must exist and that FIA must have additional documents to produce. They do not. *See* Ziccarelli Decl. at ¶¶ 9-11.

2.   **FIA Has Produced All Its "Program Performance" Documents and Cannot Establish that Any Documents are "Missing" from FIA's Production.**

Bean's Motion cannot request more than what the Federal Rules require, which is discovery of all responsive documents in a party's "possession, custody or control." Fed. R. Civ. P. 34(a) (2009). Under this rule, FIA is only obligated to produce responsive documents that *exist* that are in its possession, custody or control. *See Rockwell Int'l Corp. v H. Wolfe Iron &*

---

[1] Specifically, these documents were contained in Defendants' productions of May 5, 2009 and August 18, 2009. In following up to verify that all responsive documents had been produced, Defendants identified and produced four additional Excel documents (which contained in or were based on previously-produced data) on November 30 and another one-page document on December 4.

2

*Metal Co.*, 576 F Supp 511, 513 (W.D. Pa. 1983) (noting that Rule 34(a) cannot be used to compel a party to create, upon request of opposing party, "documentary evidence which is not already in existence in some form"); *Alexander v. FBI,* 194 F.R.D. 305, 310 (D.D.C. 2000) (stating that "Rule 34 only requires party to produce documents that are already in existence" and that "a party is not required to prepare, or cause to be prepared, new documents solely for their production.")

Bean seeks imagined documents that *do not exist*, based on its mistaken assumption that FIA's business practices must mirror Bean's own regarding its current co-branded cardholders. Bean concedes that it has received documents created in the ordinary course of FIA's business through November 2008 (Mot. To Cmpl. at 5), a point several months post-termination of the FIA-Bean contract and after FIA's efforts to retain its cardholders against Bean and Barclays' solicitations had wound down. Thereafter FIA's Dormant Card Group moved on to other projects. Bean cannot point to the absence of any specific document that FIA has refused to produce: it simply asserts generally, without factual support, that FIA has "failed to produce internal FIA documents prepared in the ordinary course of business for periods after November 2008." (Mot. To Cmpl at 5). But Bean's Motion cannot rest on speculation that FIA has documents responsive to this request, particularly where FIA has shown through the Ziccarelli Declaration that all responsive documents have been produced. *See Pew v. Scopino*, 904 F. Supp. 18, 34 (D. Me. 1995) (Hornby, J.) (adopting order denying motion to compel and noting that the moving party could "point to no particular person holding unproduced documents or any place where such documents are likely to be found" and that "[a] general order that all defendants search again for anything relevant that they might find would impose a cost on the defendants that is unjustifiable absent a showing that some specific documents of substantial significance have yet to be produced.")

3

To the extent that any financial analysis documents exist, FIA has produced all such documents identified, after a reasonable and diligent search of all documents in its possession, custody or control, as responsive to Bean's requests. Ziccarelli Declaration at ¶¶ 9-11. *See also* 8/18/09 Email from G. Goldenberg to M. Schaefer, attached as Ex. 1. This showing warrants denial of Bean's Motion. *See id.* (adopting order denying motion to compel because defendants' attorney represented that all responsive documents had been produced and the Court found that defendants had "followed a reasonable procedure to ensure full production.")

FIA has abided by its pledge to produce "program performance" documents. Bean's motion to compel must be denied, because there are no additional documents whose production could be compelled.

**C.     August 2008 Email**

     **1.     FIA's Collection and Production of Responsive Emails**

Defendants' process for collection and production of responsive documents was previously described for the Court in April in the Defendant's Opposition to Plaintiff's Motion to Compel Defendants to Review and Produce Documents and For Protective Order as to Third-Party Subpoenas and Defendants' Motion for Protective Order with Incorporated Memorandum of Law (Doc. 103) filed Apr. 7, 2009. Defendants initially collected ESI in late July and early August, 2008, gathering 179 gigabytes of data. In the course of managing that enormous amount of data, a cutoff date of July 30, 2008 (a date nearly two months **after** Bean filed this action) was applied as search terms were run across the data. Defendants produced documents, including emails, from that collection (specifically from a set of Primary Custodians and from specific shared drives used by the FIA associates working on the Bean account and card conversion, from which data was collected in September).

4

Bean did not request that FIA make a supplemental production of August 2008 email until a meet and confer on June 24, 2009.[2]  In response to Bean's counsel's direct inquiry, counsel for Defendants could not affirmatively represent that any remaining August 2008 emails would be available.  And while Defendants believed that their initial collection was adequate, Defendants nonetheless undertook a supplemental collection of August 2008 ESI in response to Bean's request.  Additional emails were collected from the Primary Custodians who managed the Bean cardholder conversion to the WorldPoints card and the shared drives they used to store their electronic documents.  Defendants thereafter produced more than 1,500 additional emails from August 2008.  This included emails from Primary Custodians Michelle Chamberlain, Richard Black, Ann Casey, Bruce Hammonds, Michael Hewlett, Christie Shepherd, Carlos Viera, Hung Pham, Andrew Civiletti and Nick Nicoletos.[3]

Additionally, certain Primary Custodians did not generate responsive documents in August 2008 because they were no longer involved with or otherwise directly working on the Dormant L.L. Bean cardholder portfolio after June 20, 2008.  These custodians include Marc Caren, Michael Daly, Bradley Emmi, Kelly Firment, and Robin Siczek.  Jim O'Donoghue had no responsive documents.  Omar McNeil was the line-of-business lawyer who supervised Andrew Civiletti.  By July 30, 2008, outside and in-house litigation counsel were responsible for supervising the Bean matter.  Thus, Mr. McNeil did not have an active role in the Bean matter.  Responsive documents, if any, in McNeil's August 2008 emails would be either 1) post-lawsuit privileged documents or 2) included in the documents produced from Civiletti's files.  After

---

[2] Defendants had already produced hard copy documents, including some email, from August 2008.  Notably, this included the email from Carlos Viera, dated Aug. 1, 2008, that Bean misconstrued in its earlier Motion to Compel filed March 17, 2009.  *See* Def'ts Opp. to Pltf.'s Mot. to Cmpl. Defts. to Review and Produce Docs. and For Prot. Order, Doc. 87, Ex. 14.

[3] Defendants' production letters do not specifically identify Nicoletos as a custodian for August 2008 emails because he saved these emails to a shared drive.  Defendants have produced Nicoletos' non-privileged responsive documents as collected from the shared drive.

5

reviewing Civiletti's files and finding only four non-privileged documents, it became apparent that McNeil would have no additional responsive documents.

Four custodians had left FIA between the time of Defendants' initial ESI collection and Bean's request for the supplemental August 2008 production. While additional August 2008 email could not be collected from their individual Outlook boxes (their computers had been reconfigured and reissued in the interim pursuant to routine FIA practice and in light of counsel's good faith belief that the initial collection had fully captured responsive documents), their responsive ESI was collected from the Bean shared drive folders and from other custodians' data. The departed custodians were John Dickerson, James Kearns, Paula Schuessler, and Lance Weaver.

Finally, Defendants were unable to collect documents from Brian Tuite's individual Outlook boxes because he inadvertently failed to properly archive his email, and FIA's automatic 90-day email deletion policy made his emails non-recoverable. Bean has deposed Tuite and there is no indication that documents were destroyed that are necessary or material to Bean's claims and defenses in this matter.

Contrary to Bean's assertions, Defendants have produced numerous August 2008 emails from the custodians about whom Bean complains. Documents created in August 2008 referencing the following custodians (as sender, recipient, cc, or in the text) have been produced as follows:

| | |
|---|---|
| Brian Tuite – 151 emails | John Dickerson – 187 emails |
| James Kearns – 143 emails | Nick Nicoletos – 228 emails |
| Lance Weaver – 35 emails | Hung Pham – 544 emails |
| Michael Hewlett – 41 emails | Paula Schuessler – 251 emails |

6

Thus, in response to Bean's request for an additional production of August 2008 emails, Defendants invested considerable effort and expense to conduct a supplemental collection of ESI and have made a substantial production of August 2008 email.

What Bean's Motion virtually ignores is that the events underlying this action occurred, and the corresponding documents were generated, before July 1, the launch date of the parties' competing card programs. Save discrete topics – the ongoing financial performance of the competing portfolios and the mailings sent to cardholders (both of which have been produced) – documents generated post-conversion and post-lawsuit are not the basis for Bean's claims and defenses. Bean cannot point to any specific information it believes is essential that is missing from these custodians' email and cannot contend that such information is not available from alternative documents and sources. There is no indication that any document necessary to Bean's claims or defenses has been destroyed or that Bean has otherwise been prejudiced. Accordingly, Bean's motion should be denied. *See McGuire v. Acufex Microsur.,* 175 F.R.D. 149, 154 (D. Mass. 1997) (requiring showing of prejudice by moving party)

After a reasonable – indeed exhaustive inquiry – Defendants have been unable to identify any additional emails from August 2008 for collection or production in response to Bean's request. Bean's motion should therefore be denied.

### C. FIA Has Complied with its Agreement with Bean Regarding Logging and Production of Post-Lawsuit Documents.

This action was filed June 3, 2008, nearly a month before the term of the co-branded Credit Card Agreement between the parties expired, yet even before that date FIA was requesting and receiving legal advice from its in-house counsel and outside counsel.

Recognizing that it would be burdensome and expensive to log post-lawsuit documents obviously protected from discovery by the attorney-client privilege and the work-product

7

doctrine, Defendants' counsel sought and obtained Bean's agreement during an early meet- and-confer that post-lawsuit documents need not be logged.  On December 11, 2008, Brad Kutrow wrote Matthew Schaefer to confirm that agreement:  "I will get a letter out reflecting our agreements that privilege logs may be provided after documents have been produced, in order to expedite production, and that the parties need not log privileged documents created after the filing date of this action."  12/11/08 Email from B. Kutrow to M. Schaefer, attached as Ex. 2.  Schaeffer did not dispute or disavow this agreement in his responsive email.  12/16/08 Email from M. Schaefer to B. Kutrow, attached as Ex. 3.   The referenced letter came on January 9, 2009, with Defendants' first production of documents, stating:  "The parties have also agreed that documents created after the filing of the lawsuit (June 3, 2008) and withheld or redacted based upon the attorney-client privilege or work product doctrine do not need to be logged and/or may be logged simply as "Post Lawsuit."  01/09/09 Letter from G. Goldenberg to M. Schaefer, attached as Ex. 4.  Again, Bean did not dispute this agreement when it received the letter and production.

  Remarkably, Bean's present motion **makes no mention** of its counsel's agreement, as confirmed twice in writing by Defendants' counsel and relied on throughout their document production.  Bean apparently seeks, nearly a year later, to renege on its agreement.

  By way of background, Defendants note that its responsive post-lawsuit documents that contained redacted privileged information were numbered and logged because – notwithstanding Bean's complaints – its collection and production included documents created months after the lawsuit was filed.  Those documents appear on its privilege log with corresponding identification numbers.  Because of the threat and then pendency of legal action by Bean, FIA personnel were seeking legal advice during the credit card conversion process and that advice would necessarily have been communicated within FIA.

8

Bean, however, has failed to disclose, let alone log, privileged documents created after it filing this lawsuit. As the Court is aware, Bean has no in-house counsel and the Brann & Isaacson firm serves an equivalent function. Yet post-lawsuit documents exchanged between Brann & Isaacson and Bean (which must number thousands of emails alone) do not appear on any Bean privilege log.

Bean's motion therefore founders on (1) its own agreement in December 2008 that post-lawsuit documents need not be logged or could be "simply logged" as post-lawsuit; and (2) its own failure to do that which it asks the Court to order Defendants to do. Defendants, conversely, have acted in good faith based on their December 2008 agreement with Bean.

Defendants stand by their privilege claim for these post-lawsuit documents, created while this action was pending and when legal advice was being requested by, provided to, and communicated within FIA on an ongoing basis. Defendants further submit that logging all post-lawsuit documents would be, under the circumstances, unnecessary and burdensomely expensive.[4] (The cost of privilege logs to date has been substantial given the volume of FIA's document production). Defendants should not be forced to engage in this exercise while Bean has failed to produce privilege logs *at all* with respect to *six* of its productions, despite repeated requests by Defendants.[5] *See* 11/9/09 Letter from Elaine McChesney to M. Schaefer, attached as Ex. 5; 11/24/09 Email from G. Goldenberg to M. Schaefer, attached as Ex. 6.[6]

---

[4] To narrow the disputed issues, Defendants have reviewed Exhibit E to Bean's Motion to Compel (listing the documents whose production Bean seeks to compel) and further analyzed those documents. Defendants have withdrawn their privilege claim for some documents and produced them without redaction. Defendants have also prepared a supplemental privilege log describing the remaining documents more fully, which is attached as Ex. 7.

[5] Notably, Bean has only logged *eight* documents on its privilege logs from the post-lawsuit time period. By Bean's own logic, this number is extremely low and suggests that Bean is withholding a large volume of documents and is not distinguishing between documents that are privileged in their entirety and those which contain some privileged information that could simply be redacted.

[6] If the Court determines, despite Bean's agreement, that the "post-lawsuit" log designation must be supplemented, Defendants would ask for a reasonable time frame to do so and that Bean be put to the same burden for the many pre- and post-lawsuit documents for which it claims privilege.

9

## **CONCLUSION**

For the foregoing reasons, Defendants request that the Court Deny Bean's Motion to Compel in its entirety.

This, the 4th day of December, 2009.

/s/ Bradley R. Kutrow
Bradley R. Kutrow (admitted *pro hac vice*)
Grant D. Goldenberg (admitted *pro hac vice*)
Angela H. Zimmern (admitted *pro hac vice*)
McGuireWoods LLP
100 North Tryon St, Suite 2900
Charlotte, NC 28202
(704) 343-2000, phone
(704) 373-8935, fax
bkutrow@mcguirewoods.com
ggoldenberg@mcguirewoods.com
azimmern@mcguirewoods.com

S. Elaine McChesney
Bingham McCutcheon, LLP
1 Federal Street
Boston, Massachusetts 02110
(617) 951-8000, phone
(617) 951-8736, fax
elaine.mcchesney@bingham.com

Corin R. Swift
Bingham McCutcheon, LLP
85 Exchange, Suite 300
Portland, Maine 04101
(207) 780-8276, phone
(207) 780-8286, fax
corin.swift@bingham.com

*Attorneys for Bank of America Corp. and FIA Card Services, N.A.*

## CERTIFICATE OF SERVICE

I, Bradley R. Kutrow, hereby certify that the foregoing Defendants' Opposition to Plaintiff's Motion to Compel and accompanying exhibits was served pursuant to the CM/ECF system upon:

> George S. Isaacson
> Matthew P. Schaefer
> Brann & Isaacson
> 184 Main Street
> P.O. Box 3070
> Lewiston, Maine 04243-3070
> (207) 786-3566, phone
> (207) 783-9325, fax
> gisaacson@brannlaw.com
> mschaefer@brannlaw.com
>
> *Attorneys for L.L. Bean, Inc.*

This the 4th day of December, 2009.

/s/ Bradley R. Kutrow
Bradley R. Kutrow

11